Andrews, J.
 

 The 44th section of the- general railroad act of 1850 imposed upon every railroad company organized thereunder an absolute duty to erect and maintain fences on the sides of its road, and made the corporation liable for all injuries done by its “ agents or engines ” to cattle or other animals thereon until such fences shall have been made. This absolute duty was modified by § 8 of chap. 282 of the Laws of 1854, which was an act amending the act of 1850, and which section substantially re-enacted § 44 of the original act, but added thereto this provision: “ That no railroad corporation shall be required to fence the sides of its road, except where such fence is necessary to prevent cattle, sheep and hogs from getting on to the track of the railroad from the lands adjoining the same.”
 

 It is conceded that the defendant has never fenced its road and that the plaintiff’s cattle were killed on the track of the defendant, on to which they had strayed, by an engine running thereon.
 

 It appears that the defendant is one of five railroads running for a distance out of the city of Buffalo on five parallel tracks, separated from each other only so far as to permit the passage of trains on the respective roads. The defendant’s tracks occupy a central position, there being the tracks of two other roads on each side of its tracks, those on the easterly side being the tracks of the Buffalo, Rochester & Pittsburgh Railroad, and of the Western New York & Pennsylvania Railroad. The exterior tracks on the easterly side of the defendant’s tracks are those of the road first named, and the plaintiff’s cattle strayed from a farm adjoining the tracks of that road on to those tracks, thence across the
 
 *486
 
 tracks of the Western New York & Pennsylvania Railroad on to those of the defendant. Neither of the roads mentioned had ever erected any fences on the sides of its road. There was no barrier to prevent cattle straying from the farm where the plaintiff’s cattle were across the intervening tracks onto the tracks of the defendant. There were eight or more tracks east of those of the defendant. The Buffalo, Rochester & Pittsburgh Company had its tracks and sidings, and also an engine house, coal platforms and other structures on its lands, hut the way was otherwise open and unobstructed.
 

 The east rail of the east track of the defendant’s road was seven feet distant from the west rail of the west track of the Western New York & Pennsylvania Railroad, and when trains are passing each other on the two tracks there is a space of only three feet between the cars.
 

 The defendant relies upon two grounds for the reversal of the judgment:
 

 First.
 
 That the cattle did not get on to the defendant’s tracks from lands
 
 “
 
 adjoining the same," within the meaning of the statute, and
 

 Second.
 
 That the court erred in rejecting evidence that fenc.es on the sides of the defendant’s road would by reason of the narrow space between its tracks and those of the adjacent roads constitute a dangerous obstruction and imperil the lives of passengers and of operatives employed about the cars and upon the tracks.
 

 The first point was adjudicated against the defendant’s contention in the case of
 
 Shepard
 
 v.
 
 Buffalo, New York & Erie Railway
 
 Company, 35 N. Y., 641. In that case cattle had strayed from lands adjoining the track of the New York Central Railroad, upon and over the track of that road, and thence upon the track of the Erie road, immediately adjoining, and were there killed. Neither company had fenced its road. It was claimed that the primary duty to fence was upon the road whose tracks were next to the. land from which the cattle strayed, and that the lands of the New York Central Railroad, from which the cattle came on to the defendant’s road, being railroad lands, were not “adjoining lands ’’ to those of the defendant within the statute of 1854.
 

 The court overruled the contention, and while conceding that the purpose of the statute would have been attained if the New York Central Company had complied on its part with the law, nevertheless held that the defendant was not thereby excused, and that, not having fenced its road, it was liable for the value of the cattle.
 

 The multiplication of railroads, and the difficulty, especially in large cities, of securing suitable and convenient approaches and outlets, makes it often desirable, and in some cases necessary, that different converging roads should be constructed for a distance on substantially parallel routes adjacent to each other. If this condition of things had been in the mind of the legislature when the legislation in question was enacted, it is not improbable that the obligation to build fences in such cases would have been imposed exclusively upon the road occupying the exterior part of
 
 *487
 
 6ho territory upon which the several roads were constructed, or have imposed a joint obligation to fence on all the roads. This would apparently have satisfied the purpose of the statute. But the statute imposes a several obligation upon every company to fence its road, with the qualification that the duty to fence does not arise where no fence is necessary to prevent cattle from reaching the track. If there is a natural or artificial barrier which bars the way, then, as there is no necessity for one, no fence is required. But the statute does not permit the company to exercise a discretion depending upon the improbability of cattle going upon the track where there is no barrier, natural or artificial, to prevent them, and under such circumstances it cannot be left to a jury to find whether the omission to fence was reasonably prudent or not. The case of
 
 Dolan
 
 v.
 
 R. R. Co.,
 
 120 N. Y., 571; 31 N. Y. State Rep., 852, proceeds upon special circumstances, and is not in conflict with the views herein expressed.
 

 In the present case there is nothing to limit or qualify the general duty to fence, or which justified the exercise of any discretion on the part of the defendant in protecting its road from the intrusion of cattle.
 

 The evidence to show the danger to passengers and operators from the erection of fences was, we think, properly excluded.
 

 It is to be observed that the question is not whether a court would, in the actual situation, compel a specific performance by the defendant of its statutory duty. It may be conceded that it would refuse to enforce specifically the building of fences along the sides of the defendant’s road as now located, if it should appear that by so doing human life would be endangered. But this, we conceive, is no answer to a civil action for damages resulting from the neglect to fence.
 

 The defendant, for its own purposes and by its own volition, has placed its tracks in such near proximity to the tracks of other roads that it cannot, as is claimed, perform its statutory duty without hazarding the safety of its passengers and others. It seeks to set up a situation which it itself has wrongfully created" as an excuse for disregarding this duty. This it cannot do. If it had appeared that the Buffalo, Rochester & Pittsburgh Railroad Company had erected and maintained a proper fence along the easterly side of its track, through or over which the cattle had nevertheless escaped on to the defendant’s tracks, a different question would be presented. The question would then arise whether the defendant might not be entitled to treat the fence of the other corporation as its fence for the purposes of the statute. But this question is not presented
 

 Following the language of the statute, as interpreted by the decisions, we must hold that the action is maintained. It is for the legislature to change or modify the statute, if any change or modification is expedient.
 

 The judgment should be affirmed.
 

 All concur.